UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

JOHN K. WEIR,

                    Plaintiff,                    05 Civ. 9268 (DFE)

                                                  This is not an ECF case.

          -against-
                                                  OPINION AND ORDER
THE CITY OF NEW YORK,

                    Defendant.
------------------------------------x

DOUGLAS F. EATON, United States Magistrate Judge.

     Pro se plaintiff John K. Weir, who is also an attorney,
alleges as follows.  In 1999, while driving to attend a court
conference in Goshen, New York, he was stopped by a policeman and
given a summons charging him with speeding.  Weir pleaded not
guilty and received notice of a hearing date.  He telephoned and
requested a postponement.  Weir says: "I was advised, to the best
of my recollection, that the hearing would not go forward because
the arresting officer was not available to appear, and that I
would be notified of a new date."  (4/30/07 Weir statement, ¶¶ 3-
6.)  Weir says he received no further notice; apparently he made
no follow-up inquiry.  In late 2002 or early 2003, he renewed his
Connecticut driver's license "with no indication that the
Connecticut DMV had received any notice of New York's alleged
action to suspend my driving privileges."  (Id. at ¶ 11.)
However, as Weir learned much later, the New York DMV's Abstract

of Driving Record for him contained the following notations:

```
NO NY LICENSE

SUSP/REV SUMMARY: Total 1 (SCOFFS 1 ON 1 DATES) JUDGEMENT $0

****************    SUSPENSIONS/REVOCATIONS    ****************

  SUSPENSION: 09/07/2001 FLD ANSWER SUMMONS    ORDER #T828889

    LOCATION: ORANGE COUNTY, TOWN OF GOSHEN.

               *** END OF RECORD ***
```

(A copy of that Abstract is page NYC37 annexed to Defendant's 6/7/07 Initial Disclosure.)

On June 15, 2004, shortly before midnight, a New York City police officer stopped Weir in Manhattan for allegedly making a right-hand turn on a red light. The officer did a computer check at the scene and "determined that I [Weir] had lost my driving privileges in the State of New York in September 2001." (4/30/07 Weir statement at ¶¶ 7-8.) The officer handcuffed Weir, held him at a stationhouse for six hours before issuing a desk appearance ticket, and advised Weir to "clear up" the Orange County matter. (Id. at ¶ 12.)

Weir promptly contacted the Goshen Town Court, which gave him a trial date of September 21, 2004, at which time the judge ordered dismissal of the 1999 speeding charge. (Id. at ¶¶ 13-14.) In Manhattan Criminal Court, on December 9, 2004, a judge instructed the Manhattan prosecutor to enter a three-month Adjournment in Contemplation of Dismissal ("ACD") on the charges

of aggravated unlicensed operation of a motor vehicle in the third degree (VTL § 511(1)) and operating a vehicle on a public highway when not duly licensed (VTL §509(1)); Weir accepted the ACD. (Id. at ¶¶ 16-18; Complaint ¶ 18.)

On or about May 29, 2005, Weir filed a Notice of Claim with the Comptroller of the City of New York. (Complaint ¶ 7.) On June 16, 2005, Michael Aronson, Chief of the Comptroller's Bureau of Law and Adjustment, responded by letter. (8/10/06 Weir statement at ¶ 9 and Exh. C.) On September 15, 2005, Weir filed the Complaint in our Court; his Civil Cover Sheet requested that this case be assigned to the White Plains courthouse.[1] (Id. at ¶¶ 5-11.) Weir alleges that he mailed Mr. Aronson a copy of the Complaint and a Request for Waiver of Service by Summons. (Id. at ¶ 12 and Exh. D.) The City's Law Department apparently received no notice of this lawsuit until July 2006. (Id. at ¶ 14.)

The Complaint names only one defendant, the City of New York. It alleges three causes of action:

---

[1] In response to my July 17, 2006 order, Weir submitted a statement dated August 10, 2006. (Later, I attached a copy of the 8/10/06 Weir statement to my 2/14/07 Order, Docket Item # 6.) The 8/10/06 Weir statement described the circumstances of Weir's attempt to file the Complaint on September 15, 2005, and attached a copy of the Complaint with a date stamp on its first page. That stamp says:

            RECEIVED
            05 SEP 15 PM 7:01
            U.S. DISTRICT COURT
                S.D.N.Y.

1. False arrest and false imprisonment
on June 15-16, 2004.

2. Malicious prosecution.

3. 42 U.S.C. § 1983: "Defendant City of
New York engaged in conduct which
substantially deprived Plaintiff of his civil
rights, specifically his right to be free
from unlawful search and seizure under the
Fourth Amendment, his right to be free from
unwarranted invasions of his privacy under
the First Amendment, his rights to be free
from cruel and unusual punishment under the
Eighth Amendment, and his right to due
process of law under the Fifth and Fourteenth
Amendments to the United States Constitution,
as well as corresponding rights under the
Connecticut or New York State Constitutions.

(Cplt. ¶32.)  He invokes jurisdiction under 28 U.S.C.

§ 1331, and, because he is a Connecticut citizen, also under

§1332.  On July 18, 2007, the case was assigned to me for all

purposes on consent of the parties pursuant to 28 U.S.C. 636(c).

The City served and filed an Answer on June 8, 2007.  On

August 9, 2007, the City filed a Notice of Motion to Dismiss

pursuant to Fed.R. Civ.Pr. Rule 12(c) (Docket Item # 16),

accompanied by a Memorandum of Law ("City Mem.") (Docket

Item # 15).

On September 11, 2007, Mr. Weir submitted a Notice of Motion

to Amend the Complaint to add individual defendants and to add a

cause of action for assault and battery (Docket Item # 20); the

motion annexed a Memorandum of Law in Opposition to Defendant's

Motion for Judgment on the Pleadings and in Support of

Plaintiff's Motion to Amend the Complaint ("Weir Mem.").

On September 27, 2007, the City served and filed a Reply Memorandum in Further Support of Its Motion to Dismiss and in Opposition to Plaintiff's Motion to Amend the Complaint ("City Reply") (Docket Item # 19).

Mr. Weir responded in a letter brief dated October 5, 2007 ("Weir Reply") (Docket Item # 21).

<u>The Complaint</u>

The Complaint details the underlying facts as follows:

> 9. At approximately 11:30 p.m. on June 15, 2004, Plaintiff, together with his wife, was lawfully proceeding in a vehicle at the intersection of First Avenue and the 96th St. entrance to the FDR Drive, in Manhattan when he was unjustifiably stopped for a traffic infraction by Police Officer Stephen Janec of the New York City Police Department.

> 10. Despite Plaintiff's protestations, and despite the presentation to Police Office[r] Janec of a valid and current Connecticut driver's license, Plaintiff was falsely charged by the arresting officer with driving in New York with a suspended license.

> 11. Despite confirming the validity of Weir's license several times, Plaintiff was nevertheless ordered by Police Officer Janec to exit the vehicle, and to place his hands on the roof of the vehicle. The vehicle was then unlawfully searched, while Plaintiff remained spread-eagled next to his car, in full view of his wife, several other police officers and numerous passing motorists.

> 12. Police Officer Janec then ordered Plaintiff to put his hands behind his back, and proceeded to handcuff the Plaintiff so tightly that circulation to his hands was cut

off, Plaintiff was then physically pushed into the back seat of a police car, by two police officers, together with another person who was also being arrested at the site.

13. Police Officer Janec falsely advised Plaintiff at the scene that he was to be arraigned before a Judge of the Criminal Court that night, which falsity was uttered maliciously with full knowledge that no such arraignment would occur until 9:30 a.m. the next morning at the earliest, and that Plaintiff would be forced to spend the intervening hours in a jail cell.

14. In the early morning hours of June 16, 2004, Plaintiff was driven to a police precinct station in midtown Manhattan, where he was interrogated, had his tie and belt removed from his person against his will; had his wallet and Driver's license taken from him, was imprisoned in a cell with two other prisoners, was fingerprinted on two separate occasions; had his "mug shot" taken; was prevented for a time from going to the bathroom and then was allowed to do so only under close supervision of Police Officer Janec; and was repeatedly and falsely accused of a misdemeanor offense of driving with a suspended license, despite Plaintiff's presentment of a confirmed valid driver's license issued by the State of Connecticut, and Defendant's police check of criminal records which indicated that Plaintiff had no criminal history of any kind.

15. Plaintiff and his wife repeatedly entreated various police officers at the precinct station that the charges were baseless, and that as a 57-year-old attorney in good standing in the State of New York who had practiced law for over 32 years in this jurisdiction, Plaintiff did not deserve to be treated in this manner. Despite these entreaties, the incarceration continued until approximately 6 a.m. on June 16, 2004, with Police Officer Janec deliberately and maliciously prolonging procedures necessary

to Plaintiff's release from imprisonment.

16.   After approximately six (6) hours
of incarceration, Plaintiff was issued a desk
warrant, and told to appear in Criminal Court
on a date certain in July, 2004, upon pain of
being arrested again and charged with
additional violations of law.

17.   Plaintiff did appear under
compulsion in the Criminal Court, 110 Centre
St., in lower Manhattan on four separate
occasions in July, 2004; October, 2004;
November, 2004; and December, 2004 to answer
to charges representing misdemeanor
violations of the Vehicle and Traffic Law
("VTL").  On each such occasion, Plaintiff
acted as his own counsel and protested his
innocence of this charge to the Court and to
the prosecutor, with supporting reasons.
Defendant, acting through various
representatives of the District Attorney's
office who appeared on those occasions,
refused willfully, maliciously and
recklessly, to entertain any dismissal of the
alleged VTL violations on each such occasion.

18.   At the time of the final court
appearance, on or about December 9, 2004, the
Court directed that the prosecutor assigned
to this case, Louis Rodriguez, Esq., enter
into an Adjournment in Contemplation of
Dismissal, and further directed Mr. Rodriguez
to shorten the period after which such a
dismissal would occur from 6 months until 3
months, i.e. until on or about March 9, 2005.

19.   Despite the Court's specific
instruction, Plaintiff has received no
notification that Defendant has in any way
complied with the Court's directive to
dismiss this case on or about March 9, 2005,
this in an apparent effort to prevent
Plaintiff from proceeding with his civil

remedies.[2]

As a basis for damages, Mr. Weir claims he

> incurred substantial monetary damages,
> including loss of significant fee earnings;
> loss of clients; direct and indirect expenses
> incurred in defending against the charges;
> damages for injuries to Plaintiff's personal
> and business reputation as a lawyer; damages
> for impairment of his future earning power;
> damages for violation of his civil and
> constitutional rights; damages for repeated
> assaults on his person; damages for false
> arrest and imprisonment; personal injury
> damages; punitive damages in an amount to be
> determined; and attorneys' fees and expenses.

He also asks our Court for

> an order of dismissal of the pending criminal
> charges against Plaintiff [in state court];
> an order expunging any and all record of
> Plaintiff's arrest, incarceration, and
> prosecution presently being maintained by
> Defendant; directing Defendant to return to
> Plaintiff's custody all copies of any such
> records, including but not limited to
> Plaintiff's fingerprints and mug shot.

The City's motion to dismiss

The City moves for judgment on the pleadings "on the grounds

that: (1) plaintiff does not allege facts sufficient to establish

federal municipal liability, and (2) any amendment of the

complaint to add any individual defendants would be futile as

plaintiff's purported claims of false arrest, excessive force,

and malicious prosecution would be subject to a motion to

---

[2] In the City's 6/7/07 Initial Disclosure, the page numbered NYC06
indicates that Weir's case was dismissed and sealed on March 4, 2005.

8

dismiss." (City Mem. p. 2.)

In his responding memorandum, Mr. Weir "submits that (a) there is no basis for dismissal on the pleadings pursuant to *Monell* and that, in any event, this defense has been waived[3]; (b) that Plaintiff's false arrest and false imprisonment claims are actionable against the City independent of *Monell*; (c) that Plaintiff's malicious prosecution claim is not 'futile'; and (d) plaintiff should be permitted to amend his complaint under Rule 15 F.R.C.P. to add individual Defendants and to plead a cause of action against all Defendants based upon assault and battery." (Weir Mem. pp. 1-2.) He also "seeks to conduct discovery on [whether] the City of New York established, prior to June, 2004, a municipal policy of 'zero tolerance' for driving with a suspended license;" he also seeks discovery on the manner in which the City implemented any such policy. (Weir Mem. p. 6.)

In its Reply, the City reiterates the arguments made in its main memorandum. The City opposes Weir's request for discovery, and argues that our Court should decline to exercise pendent jurisdiction over the state claims and should deny the motion to

---

[3] In his Mem. at p. 1, Mr. Weir argues that the City has "waived" the *Monell* "defense" because the affirmative defenses in the City's Answer "did not include any defense based upon the Supreme Court's decision in *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694-95 (1978), nor any defense which could be reasonably be construed as relying upon *Monell*." In my view, however, ¶¶ 39, 40, 45 and 46 of the Answer can readily be interpreted to raise a *Monell* "defense." Moreover, it is plaintiff's burden to plead a plausible claim of *Monell* liability.

amend on the grounds that the amendments Weir proposes [4] would be futile.

DISCUSSION

### The standard governing a Rule 12(c) motion to dismiss

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, et al., 259 F.3d 123 (2d Cir. 2001). In either case, the court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Id*. But the "factual allegations must be enough to raise a right to relief above the speculative level. . . 'The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007), citing and quoting Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). For many years, courts frequently quoted the following language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957), as the embodiment of the 12(b)(6) requirements:

> the accepted rule that a complaint should not
> be dismissed for failure to state a claim
> unless it appears beyond a doubt that the

---

[4] Weir did not include a proposed amended complaint with his motion, but the gist of his proposed amendments is described in his 9/11/07 memorandum and in his 10/5/07 reply.

> plaintiff can prove no set of facts in
> support of his claim which would entitle him
> to relief.

But that language was emphatically rejected by the Supreme Court

in *Bell Atlantic*:

> [A]fter puzzling the profession for 50 years,
> this famous observation has earned its
> retirement.  The phrase is best forgotten as
> an incomplete, negative gloss on an accepted
> pleading standard: <u>once a claim has been
> stated adequately</u>, it may be supported by
> showing any set of facts consistent with the
> allegations in the complaint. ...  *Conley*,
> then, described the breadth of opportunity to
> prove what an adequate complaint claims, not
> the minimum standard of adequate pleading to
> govern a complaint's survival.

127 S.Ct. at 1969 (emphasis added).  *Bell Atlantic* addressed the

considerations involved in scrutinizing a complaint on a 12(b)(6)

motion.  The Supreme Court pointed to "the threshold requirement

of Rule 8(a)(2) that the 'plain statement' possess enough heft to

'sho[w] that the pleader is entitled to relief.'" 127 S. Ct. at

1966.

In *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), the Second

Circuit contended with the *Bell Atlantic* opinion for the first

time.  Judge Newman wrote for the panel, at p. 155:

> Considerable uncertainty concerning the
> standard for assessing the adequacy of
> pleadings has recently been created by the
> Supreme Court's decision in *Bell Atlantic
> Corp. v. Twombly*,--- U.S. ----, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (2007).  If we were to
> consider only a narrow view of the holding of
> that decision, we would not make any
> adjustment in our view of the applicable

pleading standard.  *Bell Atlantic* held that
an allegation of parallel conduct by
competitors, without more, does not suffice
to plead an antitrust violation under 15
U.S.C. § 1.  *See id.* at 1961.  The Court
required, in addition, "enough factual matter
(taken as true) to suggest that an agreement
was made." *Id.* at 1965.  However, the Court's
explanation for its holding indicated that it
intended to make some alteration in the
regime of pure notice pleading that had
prevailed in the federal courts ever since
*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957), was decided half a century
ago.  The nature and extent of that
alteration is not clear because the Court's
explanation contains several, not entirely
consistent, signals, which we consider (not
necessarily in the order set forth in the
Court's opinion).

After a lengthy analysis, Judge Newman wrote, at pp. 157-58:

> After careful consideration of the
> Court's opinion and the conflicting signals
> from it that we have identified, we believe
> the Court is not requiring a universal
> standard of heightened fact pleading, but is
> instead requiring a flexible "plausibility
> standard," which obliges a pleader to amplify
> a claim with some factual allegations in
> those contexts where such amplification is
> needed to render the claim plausible.

1. <u>Weir fails to allege a plausible claim of *Monell*
   liability</u>.

Because Weir named the City as the sole defendant, his

federal claims are governed by *Monell v. Department of Social

Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978) and its

progeny.  Those cases have established that a municipality cannot

be liable solely on the principle of *respondeat superior.*  To

hold a municipality liable under § 1983, a plaintiff who has

12

shown a deprivation of a constitutional right must also

> establish that the city was the "person" who
> "cause[d] [plaintiff] to be subjected" to the
> deprivation. *Monell* teaches that the city
> may only be held accountable if the
> deprivation was the result of a municipal
> "custom or policy."

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct.

2427, 2432-33 (1985).

In the absence of a "custom or policy," the action of an

individual official can sometimes support municipal liability --

if he or she is high enough in the hierarchy to qualify as a

"policymaker." In *Pembaur v. City of Cincinnati*, 475 U.S. 469,

481-82, 106 S.Ct. 1292, 1299-1300 (1986), the Supreme Court

spelled out limits to this premise for liability:

> Having said this much, we hasten to
> emphasize that not every decision by
> municipal officers automatically subjects the
> municipality to § 1983 liability. Municipal
> liability attaches only where the
> decisionmaker possesses <u>final</u> authority to
> establish municipal policy with respect to
> the action ordered. The fact that a
> particular official -- even a policymaking
> official -- has discretion in the exercise of
> particular functions does not, without more,
> give rise to municipal liability based on an
> exercise of that discretion. The official
> must also be responsible for establishing
> <u>final</u> government policy respecting such
> activity before the municipality can be held
> liable. .... We hold that municipal
> liability under § 1983 attaches where -- and
> only where -- a deliberate choice to follow a
> course of action is made from among various
> alternatives by the official or officials
> responsible for establishing <u>final</u> policy
> with respect to the subject matter in question.

(Citations and footnotes omitted, emphases added.)

In order to hold a municipality liable for conduct of employees below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. *Monell,* 98 S.Ct. at 2037; *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989). In some instances, the deprivation will be caused by an employee's deliberate, unconstitutional application of a constitutional policy; in others, it may be a specific incident of a practice so permanent and pervasive that it amounts to the statutory "custom or usage."

A variation of this standard for municipal liability is referred to as "failure to train". However, this is a rather narrow category:

> ... [T]he inadequacy of [employee] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom municipal employees come in contact.
>
>     *         *         *
>
> *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes

whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. <u>That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.</u>

\*         \*         \*

Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs.

*City of Canton*, 109 S.Ct. at 1204-06 (emphasis added).

In Weir's case, neither Sergeant Janec nor the Assistant

District Attorneys [5] were policymakers.  Weir's Complaint does not allege that his arrest or his prosecution were conducted "pursuant to official municipal policy of some nature [that] caused a constitutional tort."  *Monell*, 98 S.Ct. at 2036.  As to Weir's arrest, the Complaint simply describes Janec's actions and relates the events that took place on the night of June 15 and the morning of June 16.  As to Weir's prosecution, the Complaint describes his court appearances and states that "Defendant, acting through various representatives of the District Attorney's Office who appeared on those occasions, refused willfully maliciously and recklessly, to entertain any dismissal of the alleged VTL violations on each such occasion."  (¶ 18.)  The Complaint alleges "unlawful, egregious and malicious actions of Defendant The City of New York."  In ¶ 21, the Complaint alleges: "Defendant, through its agents, servants and employees, and in particular Police Officer Janec, intended to confine Plaintiff unlawfully."   In ¶ 26, the Complaint states "Defendant, through its agents, servants and employees, commenced a criminal prosecution against Plaintiff, and maintained that prosecution over many months."  And in ¶ 32: "Defendant City of New York engaged in conduct which substantially deprived Plaintiff of his civil rights...."  At most, these allegations can be interpreted

_____

[5] Weir refers to an ADA Rodriguez and an ADA Lopez.  It is not clear what role either ADA played, except that ADA Rodriguez was apparently the ADA on duty at Weir's last Criminal Court appearance when the judge ordered the ACD and Weir accepted it.  (Cplt. ¶ 18.)

as imputing the intent of the various individuals to the City. But *respondeat superior* is not a basis for municipal liability under §1983.  The Complaint does not allege the prerequisites required by the case law in order to state a claim against the City.

The City's motion papers pointed out this defect.  In response, Weir's memorandum says at page 3:

> ... [I]t is Plaintiff's contention that Police Officer Stephen Janec, in effecting the Plaintiff's arrest and imprisonment, without probable cause and in violation of Plaintiff's civil rights, and Assistant D.A. Rodriguez, in maliciously prosecuting a case he knew or ought to have known was subject to a complete defense, were following an official government policy of "Zero tolerance" for driving with a suspended license in the State and City of New York, and a "no holds barred" prosecution of alleged perpetrators.  That such official policy, in this case, conflicted with, and violated, Plaintiff's civil rights under § 1983 is precisely the type of claim which the Supreme Court, in <u>Monell</u>, specifically allowed to proceed.

At page 4, Weir goes on to assert:

> Plaintiff should therefore ... be permitted to [] conduct pretrial discovery concerning a) the existence and implementation of an express or implied municipal policy of "zero tolerance"..., or b) that the actions of Police Officer Janec and Assistant D.A. Lopez were sufficiently widespread as to constitute the constructive acquiescence of senior policymakers of the City of New York.

At page 5, Weir suggests the possibility that the City did a poor job of training or supervising:

> Alternatively, discovery may reveal that
> [Janec and Lopez] were not implementing an
> official government policy or custom, in
> falsely arresting, imprisoning and
> maliciously prosecuting Plaintiff without
> probable cause, but rather were a poorly-
> trained or poorly-supervised police officer
> and prosecutor who, without probable cause,
> arrested . . . and prosecuted Plaintiff
> despite his possession and presentation of a
> valid Connecticut driver's license because
> they neither knew of, nor cared about,
> Plaintff's civil rights under the law.

At pages 6-7, Weir contends that his Complaint is adequate under Fed.R.Civ.Pro. Rule 8(a)(2) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002), that it suffices as the required "short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, in his view,

> the detailed factual allegations in the
> Complaint are more than sufficient to allow
> the Court to infer a <u>Monell</u> claim [if]
> construed liberally. ... Plaintiff's
> Complaint articulates an appropriate factual
> basis for municipal liability under <u>Monell</u> on
> at least four bases:  deprivation of civil
> rights by implementation of official policy;
> deprivation of civil rights by implementation
> of custom or policy; deprivation of civil
> rights by virtue of a failure to supervise
> police officers and prosecutors; and
> deprivation of civil rights by failure to
> train police officers and prosecutors.

(Weir Mem. p. 7.)

In reality, Weir's Complaint articulates none of those "four bases." It does not allege any "official policy" or "custom" of the City, and does not allege that a City policy or custom caused the conduct of Officer Janec or of the prosecutor. The Complaint

does not mention any "failure to supervise" or "failure to train."

The Complaint does not allege the sort of facts described by *Pembaur*: "a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 106 S.Ct. at 1300. Nor does the Complaint allege a pattern of deliberate indifference that resulted in any deficiency in supervision or training. Finally, the Complaint provides absolutely no factual support for the "no holds barred" policy (not mentioned by Weir until his memorandum at page 3). "It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). On a 12(b)(6) or 12(c) motion, a court considers only the facts alleged in the pleadings, and documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.

The Second Circuit has written:

> The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference. Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a

19

> complaint, especially if it involved only
> actors below the policymaking level,
> generally will not suffice to raise an
> inference of the existence of a custom or
> policy.

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).
Weir's Complaint does not contain even a "mere assertion" of a
municipal custom or policy, nor even a "simple recitation that
there was a failure to train municipal employees."  It alleges a
"single incident" that "involved only actors below the
policymaking level."

The bottom line is that "to ensure that a municipality is
not held liable solely for the actions of its employees, a
plaintiff must plead a municipal policy or custom that leads to
the constitutional deprivation."  *Jovanovic v. City of New York*,
2006 WL 2411541, *17 (S.D.N.Y. Aug. 17, 2006) (Crotty, J.),
modified in part, 2008 WL 3555515 (S.D.N.Y. Feb. 7, 2008), citing
*Board of County Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S.Ct.
1382, 1389 (1997).  The fact that Weir's Complaint does not plead
a municipal policy or custom means that it fails to state a §
1983 claim against the City (the sole defendant).  On a motion to
dismiss, the court's role is "not to weigh the evidence that
might be presented at trial, but merely to determine whether the
complaint itself is legally sufficient."  *Casper v. Lew
Lieberbaum & Co., Inc.*, 1998 WL 150993, *1 (S.D.N.Y. Mar. 31,
1998)(Koeltl, J.), citing and quoting *Goldman v. Belden*, 754 F.2d

1059, 1067 (2d Cir. 1985).

   2.  Weir's motion for leave to amend the Complaint is
       futile.

    After receiving the City's August 2007 motion, Weir sought

to amend his Complaint to add new defendants -- Officer Janec and

one or two prosecutors.  Any such amendment would be futile.

    To the extent that false arrest is the gist of a §1983 claim

against any new defendant, it would be barred by the statute of

limitations.  The statute of limitations governing § 1983 claims

is the statute of limitations for personal injury actions under

the law of the state where the cause of action accrued.  *Wallace*

*v. Kato,* 127 S.Ct. 1091 (2007), citing *Owens v. Okure*, 488 U.S.

235, 249-50, 109 S.Ct. 572 (1989).  In New York, that limitation

period is three years.  N.Y.C.P.L.R. 214(5), *Pearl v. City of*

*Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  However, "the

accrual date of a § 1983 cause of action is a question of federal

law that is *not* resolved by reference to state law."  *Wallace*,

127 S.Ct. at 1095.  In *Wallace*, the Supreme Court concluded, at

page 1100:

            We hold that the statute of limitations
        upon a § 1983 claim seeking damages for false
        arrest in violation of the Fourth Amendment,
        where the arrest is followed by criminal
        proceedings, begins to run at the time the
        claimant becomes detained pursuant to legal
        process.

In detailing its reasoning in the preceding pages, the Court had

explained, at page 1096:

> Reflective of the fact that false
> imprisonment consists of detention without
> legal process, a false imprisonment ends for
> limitations purposes once the victim becomes
> held pursuant to such process -- when, for
> example, he is bound over by a magistrate or
> arraigned on the charges.

Thus, Weir's § 1983 claim for false arrest accrued on the morning

of June 16, 2004, when he was given the desk appearance ticket

and released from the stationhouse.  The statute of limitations

on that claim expired on June 16, 2007, before Weir moved to

amend his Complaint.

Weir attempts to avoid the statute of limitations by

invoking the "relation back" provision in Fed.R.Civ.P. Rule

15(c).  In *VKK Corp. v. National Football League*, 244 F.3d 114,

128 (2d Cir. 2001), the Second Circuit summarized the law to be

applied when a plaintiff seeks to add a defendant:

> If a complaint is amended to include an
> additional defendant after the statute of
> limitations has run, the amended complaint is
> not time barred if it "relates back" to a
> timely filed complaint.  See Fed.R.Civ.P.
> 15(c).  The goal of relation-back principles
> is "to prevent parties against whom claims
> are made from taking unjust advantage of
> otherwise inconsequential pleading errors to
> sustain a limitations defense."  *Advanced
> Magnetics, Inc. v. Bayfront Partners, Inc.*,
> 106 F.3d 11, 19 (2d Cir. 1997) (quoting
> Fed.R.Civ.P. 15 Advisory Committee Note
> (1991)) (internal quotation marks omitted).
> Rule 15(c) of the Federal Rules of Civil
> Procedure describes the requirements
> necessary for an amended complaint to relate
> back to an original complaint:

> An amendment of a pleading relates

> back to the date of the original
> pleading when
> ....
>    2) the claim or defense asserted
> in the amended pleading arose out
> of the conduct, transaction, or
> occurrence set forth or attempted
> to be set forth in the original
> pleading, or
>    3) the amendment changes the
> party or the naming of the party
> against whom a claim is asserted if
> the foregoing provision (2) is
> satisfied and, within [120 days of
> filing the complaint], the party to
> be brought in by amendment (A) has
> received such notice of the
> institution of the action that the
> party will not be prejudiced in
> maintaining a defense on the
> merits, and (B) knew or should have
> known that, but for **a mistake
> concerning the identity of the
> proper party**, the action would have
> been brought against the party.

> There are thus **three requirements** that must
> be met before an amended complaint that names
> a new party can be deemed to relate back to
> the original timely complaint. First, both
> complaints must arise out of the same
> conduct, transaction, or occurrence. Second,
> **the additional defendant must have been
> omitted** from the original complaint **by
> mistake**. Third, the additional defendant
> must not be prejudiced by the delay. *See Soto
> v. Brooklyn Corr. Facility*, 80 F.3d 34, 35-36
> (2d Cir. 1996).

*VKK Corp*, 244 F.3d at 128 (emphasis added).

Weir failed to name the police officer and the prosecutors

as defendants. He knew their names, and yet he chose to sue only

the City as a defendant. Since he was a lawyer, one might call

this bad strategy, but he did not make a "mistake concerning the identity of the proper party." He failed to meet the requirement set forth in Rule 15(c)(3)(B). Accordingly, he cannot avoid the statute of limitations.

Weir has also invoked diversity of citizenship as a basis for our Court's jurisdiction. He argues against dismissal of his state-law claims for false arrest, malicious prosecution, and assault and battery. He points out that New York state law allows municipal liability based on *respondeat superior*.

### The claim for malicious prosecution

For a claim of malicious prosecution, New York law requires that the criminal proceeding must have been terminated in favor of the criminal defendant. An ACD does not satisfy that requirement. In *Smith-Hunter v. Harvey*, 95 N.Y. 191, 196-97, 712 N.Y.S.2d 438, 441-42 (Ct. App. 2000), Chief Judge Kaye wrote:

> A termination is not favorable to the accused ... if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Indeed, it is hornbook law that "where charges are withdrawn or the prosecution is terminated . . . by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused" (Prosser and Keeton, Torts § 119, at 875 [5th ed.]). Accordingly, in *Hollender v. Trump Vil. Coop.*, 58 N.Y.2d 420, 461 N.Y.S.2d 765, 448 N.E.2d 432, we held that an adjournment in contemplation of dismissal -- a disposition that requires the consent of the prosecutor, the accused and the court (see, CPL 170.55[1]) -- does not qualify as a favorable termination.

*See also, Rothstein v. Carriere*, 373 F.3d 275, 286-87 (2d Cir. 2003); *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) ("under New York law, an 'adjournment in contemplation of dismissal' . . . is not a favorable termination because it leaves open the question of the accused's guilt").

<u>The claims for false arrest, assault and battery</u>

Under New York law, a notice of claim is a condition precedent to an action in tort against a municipality. See N.Y. General Municipal Law §§ 50-e. Section 50-e(1)(a) provides:

> (a) In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, ... or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises ....

In addition, a plaintiff must commence the action within one year and ninety days from the date the cause of action accrues. Gen. Mun. Law § 50-i. Weir's causes of action for false arrest, false imprisonment, and assault and battery accrued in June 2004. "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Failure to comply results in dismissal of the claim. *Day v. Moscow*, 955 F.2d 807, 813 (2d Cir. 1992.) Subdivision 5 of § 50-e says:

> 5. Application for leave to serve a

25

late notice.  Upon application, the court in
its discretion, may extend the time to serve
a notice of claim . . .  The extension shall
not exceed the time limited for the
commencement of an action by the claimant
against the public corporation.  The court
shall consider [various factors]....

Subdivision 7 of § 50-e says:

7.    Applications under this section.
All applications under this section shall be
made to the supreme court or to the county
court: (a) in a county where the action may
properly be brought for trial, [or under
various circumstances, a different county
court]. ...

In the context of these statutory requirements, Weir has

three problems.  First, Weir did not file the notice of claim

until May 2005, which was obviously well over 90 days after the

June 2004 accrual of the causes of action for false arrest, false

imprisonment, and assault and battery.  Second, Weir never made

application to file a late notice of claim.  Third, his belated

notice of claim failed to allege assault and battery.

In *Garcia v. NYPD Pct 41*, 1997 WL 563809, *4 (S.D.N.Y. Sept.

10, 1997), Judge Preska wrote:

Because filing a notice of claim is a
mandatory condition precedent to suit against
New York City and its employees, and
plaintiff has failed to comply, plaintiff's
state law claims against New York City and
its employees must be dismissed.
    *           *           *

FN3  Furthermore, plaintiff's failure to
apply for leave to file a late notice of
claim prior to the expiration of the statute
of limitations divests me of jurisdiction

26

over these claims and precludes me from
considering plaintiff's amended complaint as
constituting sufficient notice. *Steward v.
New York City Housing Auth.*, 205 A.D.2d 606,
613 N.Y.S.2d 408 (2d Dep't 1994); *Rice v. New
York City Housing Auth.*, 149 A.D.2d 495, 539
N.Y.S.2d 977 (2d Dep't 1989).

## CONCLUSION

I grant the City's motion for judgment on the pleadings
(Docket Item # 16). I deny Weir's motion for leave to file an
Amended Complaint (Docket Item # 20).

I respectfully direct the clerk to enter judgment for the
defendant and close this case.

Douglas F. Eaton

DOUGLAS F. EATON
United States Magistrate Judge

Dated:     New York, New York
           August 8, 2008

Copies of this Opinion and Order are being mailed on this date
to:

John K. Weir, Esq.
John K. Weir Law Offices, LLC
300 Park Avenue - Suite 1700
New York, NY  10022

John K. Weir
47 Winthrop Drive
Riverside, CT 06878

Jessica T. Cohen, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY  10007